**SIGNED this 08 day of August, 2006.**

_____
**FRANK R. MONROE
UNITED STATES BANKRUPTCY JUDGE**
_____


UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 06-10134-FM |
| | § | |
| DANIEL KEITH OLIVER | § | |
| | § | CHAPTER 7 |
| DEBTOR | § | |

MEMORANDUM OPINION

This court held a hearing on May 16, 2006 on the United States Trustee's Motion to Dismiss Case Pursuant to 11 U.S.C. §707(b)(1), (b)(2), and (b)(3). This Court has jurisdiction under 28 U.S.C. §1334(a), (b) and (d), 28 U.S.C. §151, 28 U.S.C. §157(a) and (b)(1), and the Standing Order of Reference in this District. This is a core proceeding under 28 U.S.C. §157(b)(2)(A) as this is a motion to dismiss Daniel Keith Oliver's ("Debtor") bankruptcy proceeding pursuant to certain provisions of §707 of the Bankruptcy Code. It is, therefore, a proceeding arising under Title 11. This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law as required

1

by Bankruptcy Rule 7052 which is made applicable to contested matters under Bankruptcy Rule 9014.

Findings of Fact

The Debtor filed a voluntary petition under Chapter 7 of Title 11, United States Code on February 6, 2006. The Debtor is an individual with primarily consumer debt. On March 17, 2006 the United States Trustee ("UST") filed a statement pursuant to 11 U.S.C. §704(b)(1) indicating that this case is presumed to be an abuse under §707(b) of the Bankruptcy Code. The Debtor's Statement of Current Monthly Income and Means Test Calculation ("MTF or Form B22A") also noted that the presumption of abuse arises in this case.

As shown on the MTF at line 12, the Debtor's current monthly income ("CMI") for §707(b) purposes is $5,712.00. This amount included not only the Debtor's monthly wages but also a bonus he received in the six months prior to filing as required by the form. The Debtor then lists $68,544.00 in annual income on MTF line 13 ($5,712.00 multiplied by 12 months). The Debtor is a single member household. In Texas the median income for a single member household is $33,280.00 (MTF line 14.) Because the Debtor's annualized CMI exceeds the Texas median income figure for his household size (MTF line 15), the Debtor was required to complete the remainder of the MTF. The MTF as completed reflects that the Debtor has monthly disposable income of $563.40. When this amount is multiplied by 60 months (the length of a Chapter 13 plan) it equals $33,804.00. Such amount is greater than $10,000.00 which required the Debtor to check the box claiming that the presumption of abuse arises.

The Debtor owns a 1999 Chevrolet Pickup with 125,000 miles. The Debtor deducted $475.00 for vehicle ownership on line 23 of the MTF even though he owns his vehicle free and clear

2

of liens. Debtor scheduled this anticipated debt due to the fact that he will likely purchase a vehicle within the next several months. Line 23 reflects the cost of owning, rather than operating, a vehicle. Because of the age and mileage of the Debtor's vehicle, the Internal Revenue Financial Analysis Handbook (in section 5.15.1.7(4.B) allows only an additional operating expense (not an ownership expense) of $200 when the Debtor owns the vehicle outright. The Trustee in her motion claims that by deleting the $475.00 ownership expense and adding $200.00 to operating expenses, the Debtor actually has an additional $275.00 in monthly disposable income for a total of $838.40 per month. As such, the Trustee argues that the Debtor has $838.40 in monthly disposable income which would pay $50,304.00 toward his unsecured debt over 60 months. Such $50,304 exceeds the $10,000 threshold and further establishes the presumption of abuse.

The Debtor filed a Declaration of Debtor regarding Special Circumstances to Rebut Presumption of Abuse ("Declaration"). The Debtor states in the Declaration that he was previously unsuccessful in making payments under a debt consolidation program, and he therefore does not believe he would be successful in making plan payments in a Chapter 13. He further states that the cost of replacing his vehicle will almost equal the monthly amount available for a Chapter 13 plan looking at his actual expenses under Schedule I and J as opposed to the standardized expenses allowed under the MTF. The Debtor's income reported on Schedule I of his bankruptcy schedules reflects actual income of $5,412.00 per month. His net income totals $3,965.00 per month with expenses on Schedule J of $3,895.00 (which includes an anticipated car payment of $500.00) leaving $70.00 per month to fund a Chapter 13 plan.[1]

---

[1] The "current monthly income" and the standardized expenses required to be used to prepare the MTF bear no relation to the actual income and expenses reported by the Debtor on Schedule I&J. Therein lies the discrepancy in the two calculations.

The Trustee urges that these facts do not rebut the presumption of abuse. First, the Debtor had already included a car payment of $475 on the MTF and the presumption arose even with this expense provided. And second, the fact that the Debtor failed under one consolidation program does not equate to a special circumstance which would mean the Debtor could not perform under a Chapter 13 Plan.

Further, and problematic for the Debtor, he provided no documentary evidence to substantiate the changes in his income and expenses that he testified were anticipated. He merely testified that his income will likely decrease due to an anticipated job change with his current employer within six months, and that in that position he will not receive as significant a bonus as in the past.[2] He did not provide any specific amounts of any decrease in salary or bonus. And, at the time of the hearing, the Debtor had not changed positions.

The Debtor also testified that he lives a great distance from his work and drives to four different work areas in and around Austin on any given day. He testified that he drives approximately 3,000 miles per month and that his truck gets about 15 miles per gallon. As such he spends approximately $600.00 per month in gas alone, not including any repair expenses for his vehicle.[3] The Debtor did not testify nor provide any other documentation regarding any other vehicle expenses incurred on a monthly basis. This amount may also be adjusted if and when the Debtor goes "in-house" at work.

---

[2] Note that Debtor's Schedule I did not account for any bonuses he would receive in the future although the MTF accounts for a $1,500 bonus received in the 6 months prior to filing and the Debtor still holds the same position at work. It is unclear whether Debtor remains entitled to similar bonuses in his current position. He only testified that based on his career path he would be going in house with Southwestern Bell and his bonuses would not be as large. In any event, this is all speculation upon which the Court cannot base its opinion.

[3] Based on his testimony, the Court calculated his monthly gasoline bill-- 3000/15 mpg =200 miles per gallon multiplied by $3.00 cost of gas per gallon =$600.00 per month.

The Debtor also testified as to his diagnosis of depression, anxiety and bipolar disorder and the medications he is required to take. However, there was no other testimony or documentary evidence from any physician regarding these conditions, or that the various medications had been prescribed for such conditions. The Debtor indicated he had been dealing with these conditions for over 15 years. The Debtor has been gainfully employed since he was seventeen years old and has held only two jobs within that time frame. He has demonstrated, therefore, his ability to deal with these issues.

The Debtor made one clerical error on his MTF on Line 31 for health care expenses. The MTF indicates his monthly expense is $202.00 when his actual expense is $262.00. The MTF allows for his actual monthly health care expense, and the Court will use this $262.00 actual figure in connection with its review of the Debtor's MTF.

Issue Presented

Does this Chapter 7 filing constitute an abuse under 11 U.S.C. §707(b)(1)?

Conclusions of Law

At the conclusion of the hearing the Court made several comments regarding the "means test" and whether it would make certain adjustments based on the Debtor's testimony regarding certain anticipated changes in the Debtor's income and expenses. After performing its own independent research, the Court will disregard its comments on the record and rely solely on this Memorandum Opinion to constitute the actual findings of the Court as well as its conclusions of law. Since the Debtor filed this case after October 17, 2005, the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") apply. As amended by BAPCPA, section 707(b)(1) provides that a Chapter 7 case filed by an individual debtor whose debts are primarily consumer shall

be dismissed if the Court determines that it constitutes an abuse of the Bankruptcy Code.

The test for determining whether a debtor's case constitutes an abuse pursuant to §707(b)(1) varies depending on whether the debtor's "current monthly income": (1) exceeds the applicable state median or (2) is equal to or less than it. The case of a debtor whose "current monthly income" exceeds the applicable state median is subjected to a "means test." The "means test" consists of a statutory formula for determining whether the debtor's income in excess of his expenses is sufficient to permit him to pay a specified amount or percentage of his nonpriority unsecured debts during a five year period in a Chapter 13 bankruptcy proceeding. If so, the statute creates a rebuttable presumption that his case is abusive. See *11 U.S.C. §707(b)(2)(A)*. This presumption may be rebutted by the debtor by presenting evidence of "special circumstances." See *11 U.S.C. §707(b)(2)(B)*.

A debtor's "current monthly income" is "the debtor's average monthly income for the six calendar months prior to the filing of the bankruptcy case." See *11 U.S.C. §101(10A)*. Since the Debtor is above median income, he is required to complete the expense portion of the MTF.

Section 707(b)(2)(A)(ii)(I) provides, in part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtors's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

*11 U.S.C. §707(b)(2)(A)(ii)*.

6

In other words, for above-median debtors, the statute breaks down allowable expenses into five general categories: (1) those that fit into the IRS' National Standards, which include food, clothing, household supplies, personal care, and miscellaneous expenses; (2) those that fit into the IRS' Local Standards, which include housing and transportation; (3) actual expenses for items categorized by the IRS as "Other Necessary Expenses," including such items as taxes, mandatory payroll deductions, health care, and telecommunication services; (4) actual expenses, with limitations, for certain other expenses specified by the Bankruptcy Code, such as care for disabled family members and tuition; and (5) payments on secured and priority debts. Because §707(b)(2)(A)(ii)(I) provides that monthly expenses pursuant to the IRS Standards "shall not include any payments for debts," and debtors are permitted to deduct actual mortgage and car payment amounts separately, debtors must deduct from the IRS Standard expense their monthly mortgage and car payments to avoid double-dipping.

What the "means test" asks this Court to do in this case is to make its ruling in large part based upon plugged and not actual numbers. It was crafted for the purpose of being a benchmark to keep certain individuals from filing Chapter 7 and instead requiring them to file Chapter 13 to repay some of their debts. The "means test" attempts to create a formula to apply to all situations. However, the average of the last six months of income may or may not be an accurate picture of any person's real financial situation. It is merely a snapshot as of the petition date. For instance, a debtor may have made $5,000 a month for 4 months and then lost his job; but he may still qualify under the means test presumption as an abusive filer [and have his case either dismissed or converted to Chapter 13] even though because of his job loss he has no current ability to pay a dime to his creditors. Another debtor, however, may not have worked for the first 5 months and then obtained

7

a job making $5,000 per month; yet no presumption of abuse would arise even though this debtor would probably have the ability to repay his creditors a substantial amount.

Likewise, using standardized expenses will not routinely provide a realistic picture of a debtor's actual budget. For instance, in this proceeding under the MTF, the Debtor is allowed $691.00 per month for food, clothing, household supplies, personal and miscellaneous. Under Schedule J, the Debtor's food expense alone is $500.00 per month due to the fact he is traveling on the job some 60 hours a week requiring him to eat out most meals. The Debtor is also allowed a standard operating expense for his vehicle of $242.00. However, his expenses on Schedule J are $343.00 per month; and we know this is also too low due to the recent increase in gasoline prices. In fact, his current monthly gas expense approaches $600.00 per month.

A debtor must specifically rebut the presumption of abuse by providing sufficient evidence regarding special circumstances in connection with his income or expenses. If not he is at the mercy of the arbitrariness of the form itself. However, since the statute is not ambiguous in this regard, it must be presumed that Congress intended this to be the result.

The Debtor's "current monthly income" reflected on the MTF shows $5,712.00 but on Schedule I his real monthly income is $5,412.00. The Debtor testified that the $5,712.00 included a bonus he received in the 6 months prior to filing. However, the Debtor did not include any anticipated future bonus on his Schedule I. The Debtor did testify that his next job on his career path with Southwestern Bell will result in a decrease in income. However, there was no evidence to quantify the same. The Debtor did not include any of these anticipated changes in his Declaration nor did he offer any substantiating evidence regarding how the change in income and/or bonuses would affect a Chapter 13 filing. See *In re Jass,* 340 B.R. 411 (Bankr. D.Utah 2006)(The burden

8

is on the Debtor to prove a substantial change in circumstances. Because the testimony of the debtors' was not enough to meet the burden of proof, confirmation was denied). Specific evidence demonstrating the inadequacy of the numbers in the MTF is required. The Court cannot under these facts adjust the Debtor's income on the MTF as the Debtor is still employed with Southwestern Bell in the position he had for the last six months, and no specific evidence was submitted proving he would no longer receive any bonuses.

We now consider the Debtor's claimed transportation expenses. Calculation of a debtor's presumed monthly expenses starts with monthly expense amounts specified by the Internal Revenue Service in its Collection Financial Standards ("IRS Standards"). The IRS Standards identify categories and amounts of necessary expenses to be used by IRS field agents negotiating collection of tax obligations from delinquent taxpayers. Part 5 of the Internal Revenue Service Manual elaborates on the interpretation and application of the IRS Standards.

The IRS Standards establish four groups of necessary expenses: (1) food, housekeeping supplies, apparel and services, personal care products and services and miscellaneous, (2) housing and utilities, (3) transportation, and (4) other necessary expenses, reasonable in amount, that a taxpayer can substantiate. The IRS Local Standards apply to transportation costs, which are divided into two components: ownership costs and operating costs.

On his MTF the Debtor claims the standardized operating expense of $242.00. This is a plugged expense allowed to all debtors for one vehicle no matter what their actual transportation costs are. The Debtor also claims a $475.00 ownership expense pursuant to the IRS Standards even though he owns his vehicle free and clear of liens. The U.S. Trustee's primary objection is with the allowance of this figure.

A recent Texas court in the context of a Chapter 13 bankruptcy has held that a debtor may not claim an ownership deduction for a vehicle owned free and clear by the debtor in connection with the means test. *In re Hardacre,* 338 B.R. 718 (Bankr. Ft. Worth 2006). According to IRS publications regarding the application of its standards, from which the court in *Hardacre* found guidance, the ownership expense only applies to debtors who are actually obligated to pay a monthly loan or lease payment associated with a vehicle. For example, the IRS' Financial Analysis Handbook expressly instructs that "[i]f a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense," but, "[i]f a taxpayer has no car payment, only the operating cost portion of the transportation standard is used to figure the allowable transportation expense."[4] Similarly, the IRS Internal Revenue Manual provides that the ownership expense is allowed only for the "purchase and/or lease of a vehicle."[5]

If a debtor does not owe a debt upon a vehicle or a lease of one, the ownership expense is not allowed as to that debtor, and the debtor cannot claim a vehicle ownership expense under the IRS Standards. Thus, because this Debtor does not currently have a vehicle ownership expense, he cannot claim it on his MTF.

Instead, consistent with IRS Local Standards, he is entitled on the MTF to claim an additional operating expense of $200.00, which expense is allowed for debtors with cars more than six years

---

[4] Internal Revenue Manual, Financial Analysis Handbook § 5.15.1.7(4)(b). Note that the legislative history of BAPCPA specifically refers to the IRS Financial Analysis Handbook as the basis for determining expenses under §707(b). See H.R. Rep. 109-31(I), at 13-14 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 99-100.

[5] Internal Revenue Manual, Future Income §5.8.5.5.2. Even when the ownership expense is applicable because the taxpayer actually has a car or lease payment, the IRS uses its Standards as a cap, not an absolute number: the Internal Revenue Manual provides that when considering allowances for housing and transportation, the taxpayer is allowed the amount provided by the Local Standards or "the amount actually spent."

10

old or having more than 75,000 miles.[6] See also, *In re McGuire*, 342 B.R. 608 (Bankr. W.D. Missouri 2006)(Ownership expense not allowed but $200.00 additional operating expense approved based on age and mileage). The U.S. Trustee, in its own Motion, agrees that this additional operating expense is allowed.[7] Since the guidelines of the IRS are to be used to determine the reasonableness of a Debtor's expenses under the "means test," then the Debtor is entitled to the $200.00 in additional operating expense since he owns an older vehicle with mileage in excess of 75,000 miles, but the deduction of $475 as an anticipated expense for replacement of his vehicle must be denied.

The Debtor also testified that he uses his vehicle to travel to and from four different work locations all quite a distance from his home. He indicated he drives at least 3,000 miles per month. His vehicle averages about 15 miles per gallon making his gas bill, as the Court calculated it, about $600 per month in addition to his other transportation operating expenses.[8] The Debtor is allowed $242.00 as a standardized operating expense on the MTF in this category. That alone bears absolutely no relation to reality in this case. Fortunately, for the Debtor other IRS guidelines allow additional expenses if they are "necessary" and the amount is reasonable considering the taxpayer's individual facts and circumstances.[9] The Court finds that the Debtor's actual gasoline expense is a

---

[6] See Internal Revenue Manual Future Income §5.8.5.5.2

[7] "Therefore in situations where the taxpayer owns a vehicle that is currently over six years old and/or has reported mileage of 75,000 or more, an additional operating expense of $200 will generally be allowed for the collection period that remains after the loan/lease has been "retired" plus the operating expense" *Internal Revenue Service Manual, Part 5 (Collecting Process), Chapter 8 (Offers in Compromise), Section 5 (Financial Analysis), Section 5.8.5.5.2 –www.irs.gov/irm/part5*.

[8] 3000 miles /15 miles per gallon=200 gallons. 200 gallons x $3.00 =$600 per month

[9] Internal Revenue Manual §5.15.1.7 (05-01-2004), Paragraph 5 Other-"Other expenses may be allowed if they meet the necessary expense test. The amount allowed must be reasonable considering the taxpayer's individual facts and circumstances."

necessary expense. The National local expenses are only guidelines from which this Court can deviate when it is reasonable to do so under the facts of a particular case.[10] The Debtor is entitled to an additional $358.00 per month for gas expense under his current working conditions in addition to the $242.00 standardized expense for a total of $600.00. Although the Debtor provided no actual documentation nor listed this increased expense in the Declaration, the Debtor's working conditions and his knowledge with respect to miles driven per month suggests this expense is accurate.[11] The Debtor, however, provided no other evidence of other monthly vehicle expenditures so the Court is unable to allow any additional expenses over $600.00 except for the $200.00 allowed by the IRS guidelines for older vehicles with high mileage. Therefore, the Debtor is allowed $800.00 total for his transportation operating expense on his MTF.

The Debtor's revised MTF is therefore as follows[12]:

| | |
|---|---:|
| Line 3–Gross wages, salary, tips, bonuses, overtime, commissions | $5,712.00 |
| Line 19-National Standards: food, clothing, household supplies, personal care and miscellaneous | 691.00 |
| Line 20A-Local Standards: housing and utilities; non-mortgages expenses | 319.00 |
| Line 21–Local Standards: housing and utilities; adjustment (Maintenance & HOA) | 105.00 |
| Line 22 Local Standards: transportation; vehicle operation/public transportation expense (Includes the standard $242.00, plus an additional $358.00 for gas allowed by the court to meet $600.00 gas expense plus $200 operating expense for older vehicles) | 800.00 |

---

[10] Internal Revenue Manual §5.15.1.7 (05-01-2004) Paragraph 7 -"National local expense standards are guidelines. If it is determined a standard amount is inadequate to provide for a specific taxpayer's basic living expenses, allow a deviation. Require the taxpayer to provide reasonable substantiation and document the case file."

[11] Allowing this deduction also does not change the outcome in this particular case, but merely demonstrates that the standardized operating expense for individuals bears no relation to reality in this case. Debtors should, therefore, make every attempt to justify any increased expenses by filing a Declaration regarding their changed circumstances and providing appropriate documentation reflecting the same.

[12] Line items on the MTF were not included where Debtor had no expense.

12

| | |
|---|---:|
| Line 23-Local Standards: transportation ownership/lease expense<br>(Debtor had scheduled $475 for anticipated car purchase but not allowed under IRS standards) | 0.00 |
| Line 25-Other Necessary Expense: taxes | 1,264.00 |
| Line 26-Other Necessary Expense: life insurance | 90.00 |
| Line 31-Other Necessary Expense: health care | 262.00 |
| Line 32-Other Necessary Expense: telecommunication services | 390.00 |
| Line 34-Health Insurance, Disability Insurance and HSA Account | 146.00 |
| Line 37-Home energy costs in excess of allowance specified by IRS Local Standards | 100.00 |
| Line 39-Additional food and clothing expense | 25.00 |
| Line 40-Continued Charitable Contribution | 5.00 |
| Line 42-Future payments on secured claims<br>(Includes home loan of $956.00 and computer $76.00) | 1,032.00 |
| Line 45-Chapter 13 administrative expense | 62.50 |
| Line 47-Total of all deductions allowed under §707(b)(2) | 5,291.50 |
| Line 48-Current monthly income | 5,712.00 |
| Line 49-Total of all deductions allowed under §707(b)(2) | 5,291.50 |
| Line 50-Monthly disposable income under §707(b)(2) | 420.50 |
| Line 51-60 month disposable income under §707(b)(2)<br>($25,230.00 exceeds $10,000.00) | 25,230.00 |

After the Court's revisions, the presumption of abuse still arises. As such this case must either be dismissed or the Debtor must convert to a Chapter 13 proceeding. Since the presumption of abuse arises under §707(b)(1) and (2), the Court will not address the Trustee's request for dismissal under §707(b)(3).

The Debtor in his Declaration urges that the fact that he has tried debt consolidation before and failed should be considered a "special circumstance" and allow him to proceed under Chapter

13

7. Although the Court understands the Debtor's difficulty in attempting to complete a debt consolidation plan, this is not a situation that would justify additional expenses or adjustments of monthly income.

Likewise, the Debtor testified about his serious mental conditions. Serious medical conditions can rebut the presumption of abuse. However, the Debtor has maintained steady employment over the last 15 years that he has suffered these conditions. And, the Debtor failed to provide any corroborating evidence of how these conditions were affecting his income or expenses. The Debtor has failed to sustain his burden to rebut the presumption.

### Conclusion

It is quite possible that the Debtor will not be able to fund a Chapter 13 Plan when he replaces his aging truck with a newer one as he will be entitled to do at some point in the next five years. However, that is not a factor the Court can consider in this inquiry. The Debtor must either be denied bankruptcy relief or convert to a Chapter 13 as that is the will of Congress. And, unfortunately, this result has very little to do with whether the Debtor will be able to actually fund a plan for the next five years that will pay his unsecured creditors any material part of their debts.

###